Rowdy B. Meeks, Kansas Bar No.16068*
**Rowdy Meeks Legal Group LLC**
8201 Mission Road, Suite 250
Prairie Village, Kansas 66208
Tel:  (913) 766-5585
Fax:  (816) 875-5069
Rowdy.Meeks@rmlegalgroup.com
www.rmlegalgroup.com
**pro hac vice* motion granted
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Katherine Kuzich, on behalf of herself and all others similarly situated, *et al.* | No. 2:17-cv-02902-GMS |
| Plaintiffs, | **PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM FOR APPROVAL OF THE PARTIES' COLLECTIVE ACTION SETTLEMENT AND DISMISSAL WITH PREJUDICE** |
| v. | |
| HomeStreet Bank and HomeStreet Home Loan Center Co., | |
| Defendants. | |
| _____ | Assigned to:  Hon. G. Murray Snow |
| HomeStreet Bank, | |
| Counter-Claimant | |
| v. | |
| Katherine Kuzich, | |
| Counter-Defendant | |

Plaintiff Katherine Kuzich, on behalf of herself and all others similarly situated, moves this Court to approve Parties' FLSA collective action settlement and dismiss this

1

case with prejudice. The Parties' Settlement Agreement which is attached as Exhibit A is certainly a fair and reasonable resolution of a *bona fide* dispute. The Settlement includes payment for alleged unpaid overtime for Plaintiff and all Opt-Ins, a service award for Plaintiff, and payment of her reasonable attorney's fees and necessary expenses. Defendants do not oppose this Motion. As Plaintiff details below, the Parties' FLSA settlement easily meets the applicable approval standard so this Court should approve it. This Court's approval of the Parties' settlement ends this more than two year old litigation.

**MEMORANDUM IN SUPPORT OF MOTION**

**I.     INTRODUCTION AND STATEMENT OF FACTS**

On August 29, 2017, Plaintiff filed this FLSA collective action lawsuit ("the Action") which alleged that Defendants worked mortgage processors off the clock and thus failed to pay them all overtime premiums. Doc. 1. Defendants filed their Answer on September 26, 2017, which categorically denied any liability to Kuzich and any other Processor. Doc. 18.

The Parties then exchanged multiple MIDP disclosures and conducted initial written discovery. Next, Plaintiff moved for FLSA conditional certification of the multi-state collective action. This Court granted, in part, Plaintiff's motion and conditionally certified a collective action of Loan/Processors I, II, and III and Loan Processors I, II, and III in the Single Family Lending Division nationwide in the last three years. Docs. 20-21, 40, 42-43, 54.

On October 1, 2018, Plaintiff sent the Court-approved notice to about 258 current and former Processors. In addition to Plaintiff, forty-five (45) individuals joined the action

("Opt-In Plaintiffs"). Exhibit B, Declaration of FLSA Counsel Rowdy B. Meeks ("Meeks Dec."), p. 3. Twenty-five (25) of those individuals work(ed) for Defendants in California ("the California Opt-In Plaintiffs"). The remaining Opt-Ins worked in states outside California ("Other Opt-In Plaintiffs"). Ex. A, Settlement Agreement, p. 2. Defendants deposed Plaintiff during the FLSA notice period.

On January 9, 2019, the Parties filed a Joint Status Report. Therein, Defendants requested leave to amend their pleadings to assert counterclaims against Plaintiff. The Court granted Defendants' request, and Defendants subsequently pled the counterclaims against Plaintiff. *Id.*

On February 4, 2019, Kuzich moved to amend her Complaint to assert individual California state law claims on behalf of the 25 California Opt-In Plaintiffs. The Court granted Plaintiff's motion, and she filed a First Amended Complaint alleging California state law claims on behalf of the California Opt-In Plaintiffs for unfair failure to pay all overtime and double time wages (Labor Code §§ 510 & 1194); failure to pay all wages due at separation (Labor Code § 203); failure to furnish timely and accurate wage statements (Labor Code §§ 226 & 226.3); and a violation of California's unfair competition act (Bus. & Prof. Code §§ 17200 *et seq.*). Defendants filed their Answer to the First Amended Complaint denying all liability and asserting counterclaims against Plaintiff, who likewise denied any liability. *Id.*

Next, Defendants served individual discovery requests on the forty-five (45) Opt-Ins which totaled more than 500 requests. During discovery, the Parties exchanged voluminous information, data, and documents necessary to fully and fairly evaluate

Plaintiff's and the Opt-In Plaintiffs' claims, the counterclaims, and defenses, including dates of employment, weeks worked in the relevant time period, compensation data, and other relevant employment data. Thus, the Parties and their attorneys had significant and sufficient information to evaluate settlement when they reached an agreement. Ex. B, Meeks Dec., pp. 4-6.

## II.     THE PARTIES' SETTLEMENT AGREEMENT

The Parties have agreed to fully and finally settle this matter for a Gross Settlement Amount of $145,000. This Amount includes all payments to Plaintiff and the Opt-Ins, attorney's fees and expenses, Plaintiff's service award, and settlement administration expenses. Defendants will pay their share of the FICA employment taxes in addition to the $145,000. *See* Ex. A, Settlement Agreement, pp. 4-8.

Plaintiff and each Opt-In will receive his or her pro rata share of the Net Settlement Amount which is the amount which remains after deducting attorney's fees and expenses, Plaintiff's service award, and settlement administration expenses. Plaintiff's and each Opt-In's individual settlement payment is based upon the number of weeks each worked as a Processor during the settlement time period because each worked in the same job, earned about the same hourly rate, and allegedly worked about the same unpaid overtime hours per week. The minimum payment is $150. *Id.* The average payment is about $3,150 before attorney fee, expense, service award, and administration deductions, and $1,700 after these deductions. Ex. B, Meeks Dec., p. 6. One-half of the individual settlement payment is wages subject to usual wage taxes and W2 reportable, and one-half is

compensation for alleged liquidated damages which is not subject to withholding taxes, and 1099 reportable. Ex. A, Settlement Agreement, pp. 5-6.

In exchange for the settlement payments, Plaintiff and the Opt-Ins agree to a limited wage and hour release. Plaintiff also agrees to a general release given her service award. Likewise, Defendants have agreed to a general release of Plaintiff which includes the dismissal of their counterclaims against her. *Id.* at pp. 8-14.

Plaintiff and the Opt-Ins will receive the Settlement Notice and a check. The Opt-Ins who cash their check join the settlement and waive their wage and hour claims. The Opt-Ins who do not cash their check, do not waive any claims and may pursue their claims individually if they so choose. *Id.* at pp. 16-17.

As for the service award, the Settlement Agreement provides for $5,000. As detailed below, Plaintiff has actively litigated this case including answering multiple sets of written discovery and traveling across the United States for three days for her deposition. *Id.* at pp. 6-7; Ex. B, Meeks Dec., p. 16.

In addition, the Settlement Agreement provides for $48,333.33 for Plaintiff's attorney's fees and $9.074.23 in reasonable expenses which includes the FLSA notice cost. Finally, the Settlement Agreement contemplates payment for the expense of administering the settlement by third party administrator, Analytics LLC. Ex. A, Settlement Agreement, p. 17.

## III.  THE COURT SHOULD APPROVE THE PARTIES' SETTLEMENT BECAUSE IT IS FAIR AND REASONABLE.

Settlement of Plaintiff's FLSA collective action claims requires this Court's approval. *Jones v. Agilysys, Inc.*, 2014 WL 108420, at *2 (N.D. Cal. Jan. 10, 2014) (*citing Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 (11th Cir. 1982)).  "in reviewing an FLSA settlement, the district court's obligation is not to act as a caretaker but as gatekeeper; rather, it must ensure that private FLSA settlements are appropriate given the FLSA's purpose and that such settlements do not undermine the Act's purposes." *Id.*

### A. The Parties Had A Bona Fide Dispute Over Overtime Wages.

Because the Ninth Circuit has not established criteria for district courts to consider in determining whether a FLSA settlement should be approved, district courts in the Ninth Circuit look to the Eleventh Circuit's standard which requires that the settlement be "a fair and reasonable resolution of a bona fide dispute." *Quiroz v. City of Ceres,* 2019 WL 1005071, *2 (E.D. Cal. Mar. 1, 2019) (citations omitted).  To find a bona find dispute, "[t]here must be 'some doubt . . . that the plaintiff would succeed on the merits through litigation of their [FLSA] claims." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (quotations omitted).

Here, there is a bona fide dispute over the Opt-In Plaintiffs' entitlement to overtime wages.  Defendants consistently denied liability for about two years and opposed conditional certification. The Parties materially dispute whether the Opt-In Plaintiffs worked overtime, the amount of it, and Defendants' knowledge of it.  While Plaintiff obtained FLSA conditional certification, Defendants stood ready to file for decertification

and then contest the claims at trial.  Thus, Plaintiff faced a very real risk of decertification and failing to maintain the collective action through trial.  Thus, there was certainly "some doubt" Plaintiff and the Opt-Ins would succeed at trial on the merits, so the Parties had a bona fide dispute over the Opt-Ins overtime wages claims.

### B. The Parties' Settlement Is A Fair And Reasonable Resolution Of Their Bona Fide Dispute Over Overtime Wages.

Ninth Circuit district courts employ a "totality of circumstances approach that emphasizes the context of the case" in evaluating an FLSA collective action settlement. *Selk*, 159 F.Supp.3d at 1173. Under this approach, this Court should consider the following factors: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion.  *Id.*  Settlements that reflect a fair and reasonable compromise of issues that are actually in dispute should be approved to promote the efficiency of encouraging settlement of litigation. *McKeen–Chaplin v. Franklin Am. Mortg. Co.*, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012).  The Parties' Settlement here easily meets the totality of circumstances approach.

#### 1. The plaintiff's range of possible recovery

Here, the settlement payouts are material -- the average payment is about $3,150 before attorney fee, expense, service award, and administration deductions, and $1,700 after these deductions.  This represents about 55% of the possible recovery for unpaid

7

overtime. Ex. B, Meeks Dec., pp. 5-6. Ninth Circuit district courts routinely approve settlements with a far lesser recovery. *See, e.g., Jones,* 2014 WL 248367 at *2 (approving an FLSA settlement at 30 to 60 percent of possible recoverable damages); *Selk,* 159 F.Supp.3d at 1175 (approved FLSA settlement which returned 26% - 50% of best recovery); *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1042 (N.D. Cal. 2008)(affirming settlement representing 9% of maximum potential recovery); *Bellinghausen*, 306 F.R.D. at 256 (N.D. Cal. 2015) (finding a wage and hour class settlement fair where the settlement fund represented between 9% and 27% of the total potential recovery). This factor thus weighs in favor of approval.

        2.       The stage of proceedings and amount of discovery completed

The Parties engaged in extensive discovery before they reached a settlement. The Parties exchanged (1) more than ten (10) MIDP responses, (2) numerous sets of written discovery, and (3) tens of thousands of documents. Defendants also deposed Plaintiff. Further, Plaintiff obtained FLSA conditional certification over Defendants' opposition. Thus, this case had sufficiently advanced over its almost two years for the Parties to make an "informed decision" about settlement. *See Selk*, 159 F.Supp.3d at 1177. This factor also weighs heavily in favor of approval.

        3.       The seriousness of the litigation risks faced by the Parties

Without a settlement, Plaintiff faced potential decertification, summary judgment, and if it proceeded, prevailing at trial. Furthermore, continued litigation would be costly which could result in a verdict against the Opt-In Plaintiffs at trial. Plaintiff thus faced a

significant risk by continued litigation which could have resulted in lesser or no recovery for her or the Opt-In Plaintiffs. This factor then likewise weighs in favor of approval.

    4.  The scope of any release provision in the settlement agreement

Here, the release scope is limited to wage and hour claims like those at issue in this case. Further, Opt-In Plaintiffs can choose whether to accept the settlement and the limited release by cashing their checks; those Opt-In Plaintiffs who do not cash their checks do not release any claims. Ex. A, Settlement Agreement, pp. 16-17. This limited release and settlement acceptance choice weighs in favor of approval. *See Selk*, 159 F.Supp.3d at 1178-79.

    5.  The experience and views of counsel and the opinion of participating plaintiffs

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Id.* at 1176-77. In this case, Plaintiff's counsel has extensive experience in FLSA collective actions and fully support the settlement. Plaintiff and other Opt-In Plaintiffs support the settlement; none of the Opt-In Plaintiffs to Plaintiff's knowledge oppose the settlement. Defendants and their counsel likewise support the settlement. Ex. B, Meeks Dec. pp. 6-7. Accordingly, this factor favors approval.

6. The possibility of fraud or collusion.

The Parties here did not collude to settle this almost two year old case. Instead, the Parties decided to settle after extensive discovery and motion practice. Nothing in the record suggests fraud or collusion. This factor then also supports approval.

### C. This Court Should Approve Plaintiff's Service Award.

This Court may award an incentive payment to the named plaintiff in a FLSA collective action to compensate them for work done on behalf of the collective. *Id.* at 1181. Here, Plaintiff seeks a $5,000 service award for her extensive work in advancing this litigation on behalf of the FLSA collective which resulted in this settlement. Plaintiff spent hours completing MIDP responses, responding to multiple sets of discovery responses, traveling from Charlotte, North Carolina to Phoenix for three (3) days for her deposition, and participating in settlement discussions. Ex. B, Meeks Dec., p. 16. The proposed $5,000 service award is only about 3.4% of the settlement amount which is very reasonable. *See, e.g., Selk,* 159 F.Supp.3d at 1176 (approved $5,000 service award which was 11% of settlement).

### D. This Court Should Approve Plaintiff's Reasonable Attorney's Fees.

The FLSA provides that a district court shall require payment of reasonable attorney's fees and costs. 29 U.S.C. § 216(b). Where a settlement produces a common fund for the benefit of the entire class, courts may employ either the lodestar method or percentage-of-recovery method to determine a reasonable attorney's fee. *See, e.g., Selk,* 159 F.Supp.3d at 1180.

Here, Plaintiff requests this Court apply the percentage of recovery method to approve her attorney's fees of one-third of the Gross Settlement Fund which is $48,333.33 as set forth in the Parties' Settlement Agreement. Ex. A, Settlement Agreement, p. 7. This request is very reasonable given similar awards in other cases. *See, e.g., Delnonce v. GlobalTranz Enterprises, Inc.,* 2018 WL 6505868, *2 (D. Ariz. July 27, 2018) (awarding one-third attorney's fees in FLSA collective action case).

Furthermore, a lodestar cross-check confirms the requested fee is very reasonable. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir.2002) (noting that when applying the percentage-of-the-fund approach, the court may use the lodestar as a cross-check on the reasonableness of the fee request). Plaintiff's requested attorney's fees are more than three (3) times <u>less</u> than the current lodestar. Ex. B, Meeks Dec., p. 14. This confirms the reasonableness of the requested fee. *See Selk,* 159 F.Supp.3d at 1180-81.

### E. This Court Should Approval Plaintiff's Necessary Litigation Expenses.

The FLSA allows Plaintiff to recover her "costs of the action." 29 U.S.C. § 216(b); *Selk,* 159 F.Supp.3d at 1181. "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora,* 303 F.R.D. 356, 375 (E.D. Cal. 2014) (quotation omitted). Plaintiff requests this Court award her $9,074.23 in expenses from the Gross Settlement Fund; the expenses are itemized in Ex. B, Meeks Dec., p. 15-16. These expenses include travel costs, deposition costs, and FLSA notice costs. *Id.*

### F. This Court Should Approve The Settlement Administration Expense.

The Settlement Agreement provides that Analytics LLC shall administer the settlement and that the expenses will be paid out of the Gross Settlement Amount. Ex. A, Settlement Agreement, p. 7. Plaintiff requests that this Court approve this expense as a "costs of the action" under the FLSA.

### IV. CONCLUSION

Based upon the above, Plaintiff requests that this Court grant her unopposed Motion, approve the Parties' settlement, and dismiss this case with prejudice. Plaintiff has attached a proposed Order as Exhibit C.


Dated: September 17, 2019

Respectfully submitted,

*/s/ Rowdy B. Meeks*
Rowdy B. Meeks*, Kansas Bar No.16068
**Rowdy Meeks Legal Group LLC**
8201 Mission Road, Suite 250
Prairie Village, Kansas 66208
Tel:  (913) 766-5585
Fax:  (816) 875-5069
Rowdy.Meeks@rmlegalgroup.com
www.rmlegalgroup.com

*pro hac vice motion granted*

Attorneys for Plaintiffs

## Certificate of Service

I hereby certify that a true and correct copy of the above was sent on September 17, 2019 pursuant to the service requirements of the ECF/CM for the District of Arizona which will notify all counsel of record.

                                                /s/ Rowdy B. Meeks
                                           Rowdy B. Meeks, Attorney for Plaintiff