## COLLECTIVE ACTION SETTLEMENT AGREEMENT

This Collective Action Settlement Agreement (the "Agreement") resolves the matter captioned *Kuzich et al. v. HomeStreet Bank et al.,* No. 2:17-cv-02902-GMS (D. Ariz.) and is entered into between, on the one hand, the named Plaintiff Katherine Kuzich, the California Opt-In Plaintiffs (as defined below), the Other Opt-In Plaintiffs (as defined below), and, on the other hand, Defendants HomeStreet Bank and HomeStreet Home Loan Center Co. (all of the foregoing collectively "the Parties").

## FACTUAL BACKGROUND AND RECITALS

1.      Kuzich filed a Fair Labor Standards Act lawsuit ("the Action") in the United States District Court for the District of Arizona on August 29, 2017.  Defendants filed their Answer on September 26, 2017, which denied any liability to Kuzich and the potential collective action participants.

2.      The Parties conducted initial written discovery and the deposition of Kuzich. Kuzich then moved for conditional certification of the multi-state collective action pursuant to § 216(b) of the Fair Labor Standards Act ("FLSA"). The Court granted, in part, Kuzich's motion for conditional certification on August 15, 2018 and conditionally certified a collective action of "All Processors I, II, and III and Loan Processors I, II, and III in the Single Family Lending Division who were employed by HomeStreet Bank within the United States at any time during the last three years through entry of judgment in this case." The Court denied certification as it relates to Kuzich's alleged claim that incentive compensation was not paid at the regular rate of pay.

3.      On October 1, 2018, the Court-approved notice was sent to a collective action class of approximately 258 current and former employees of HomeStreet Bank that fell within the collective action group conditionally certified by the Court.

1 of 22

4817-0694-0572

4.      In addition to Kuzich, forty-five (45) individuals returned consents to join this collective action.  Twenty-five (25) of those individuals worked for HomeStreet Bank in California ("the California Opt-In Plaintiffs"); of those 25, one individual still works for HomeStreet Bank in California.  The remaining individuals who opted in worked for HomeStreet Bank in states other than California ("Other Opt-In Plaintiffs").  Together, the California Opt-In Plaintiffs and the Other Opt-In Plaintiffs are the ("Opt-In Plaintiffs").

5.      On January 9, 2019, the Parties filed a Joint Status Report with the Court. Therein, Defendants requested leave to amend their pleadings to assert counterclaims against Kuzich. The Court granted Defendants' request, and Defendants subsequently pled counterclaims against Kuzich on February 4, 2019 for unjust enrichment and breach of the implied covenant of good faith and fair dealing.

6.      That same day, on February 4, 2019, Kuzich moved to amend her Complaint to assert individual California state law claims on behalf of the California Opt-In Plaintiffs. The Court granted Kuzich's request to amend, and on March 26, 2019, the California Opt-In Plaintiffs and Kuzich filed a First Amended Complaint alleging California state law claims on behalf of the California Opt-In Plaintiffs for unfair failure to pay all overtime and double time wages (Labor Code §§ 510 & 1194); failure to pay all wages due at separation (Labor Code § 203); failure to furnish timely and accurate wage statements (Labor Code §§ 226 & 226.3); and a violation of California's unfair competition act (Bus. & Prof. Code §§ 17200 *et seq.*).

7.      Defendants filed their Answer to the First Amended Complaint on April 5, 2019 denying all liability and asserting counterclaims against Kuzich, who denied liability.

8.      During discovery, the Parties exchanged voluminous information, data, and documents necessary to fully and fairly evaluate Kuzich and the Opt-In Plaintiffs' claims, the counterclaims, and defenses, including dates of employment, weeks worked in the relevant time period, compensation data, and other relevant data.

4817-0694-0572

9.     Kuzich, the Opt-In Plaintiffs, and their counsel have conducted a comprehensive investigation and evaluation of the facts and law related to the claims, counterclaims, and defenses asserted in the Action. Based upon their analysis and evaluation of the facts and law, and recognizing the substantial risks of continued litigation, including the possibility that the Action, if not settled now, might result in a recovery that is less favorable to Kuzich and the Opt-In Plaintiffs, and that may not occur for many months, if at all. Rowdy Meeks Legal Group LLC ("FLSA Counsel") represents Kuzich and the Opt-In Plaintiffs and is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate, and that this Agreement is in the best interests of Kuzich and the Opt-In Plaintiffs.

10.    Defendants deny and continue to deny all of Kuzich's and the Opt-In Plaintiffs' allegations in the Action, specifically including, without limitation, that HomeStreet Home Loan Center Co. is or was a joint employer of either Kuzich or any Opt-In Plaintiff, and that Kuzich and the Opt-In Plaintiffs were similarly-situated for collective action purposes. Notwithstanding, and without admitting or conceding any liability or responsibility for damages, Defendants have agreed to settle the Action on the terms and conditions set forth in this Agreement solely to avoid the burden, expense, and uncertainty of continued litigation.

11.    It is agreed by and among the Parties that this Action and any claims, counterclaims, damages, or causes of action arising out of or related to the dispute which is the subject of the Action be settled and compromised as between Kuzich, the Opt-In Plaintiffs, and Defendants, subject to Court approval and pursuant to the terms and conditions set forth in this Agreement.

## TERMS OF THE AGREEMENT

In consideration of the mutual promises contained herein and other good and valuable consideration, the sufficiency of which is expressly acknowledged, the Parties agree as follows:

4817-0694-0572

1.      <u>**Definitions Used in this Agreement**</u>:

      A.      **"Action"** means the above-referenced collective action lawsuit, *Kuzich et al. v. HomeStreet Bank et al.,* No. 2:17-cv-02902-GMS (D. Ariz.).

      B.      **"Administrator"** means Analytics LLC.

      C.      **"Agreement"** means this "Collective Action Settlement Agreement."

      D.      **"California Opt-In Plaintiffs"** means the individually named California Plaintiffs identified in the First Amended Complaint.

      E.      **"Court"** means the United States District Court for the District of Arizona.

      F.      **"Defendants"** means HomeStreet Bank and HomeStreet Home Loan Center Co.

      G.      **"Defense Counsel"** means Snell & Wilmer LLP.

      H.      **"Effective Date"** means the date the Court approves the Settlement and dismisses this Action. This Settlement shall be deemed final and effective immediately upon the Court's entry of an order dismissing the Action and all claims and counterclaims with prejudice.

      I.      **"FLSA Counsel"** means Rowdy Meeks Legal Group LLC.

      J.      **"FLSA Weeks"** means the number of weeks Kuzich or the Opt-In Plaintiffs, respectively, worked and were allegedly not paid overtime compensation as a Processor for HomeStreet Bank during the applicable FLSA statute of limitations period set forth in the Spreadsheet.

      K.      **"Gross Settlement Amount"** means the amount of $145,000.00. This amount will cover the settlement allocations to Kuzich, the Opt-In Plaintiffs, attorneys' fees and costs, and the Administrator's costs, such that Defendants' settlement liability shall not exceed the sum of $145,000.00, except for HomeStreet Bank's share of the required payroll taxes. HomeStreet Bank shall pay the employer's share of the required payroll taxes in addition to the $145,000.00 amount.

4817-0694-0572

L.    **"Net Settlement Amount"** means $145,000.00 *minus* any service payment to Kuzich as provided in Paragraph 3, *minus* any attorneys' fees and expenses as provided in Paragraph 4, and *minus* the Administrator's expenses to administer the Action as provided in Paragraph 5.

M.    **"Opt-In Plaintiffs"** means all California Opt-In Plaintiffs and Other Opt-In Plaintiffs who worked as Processors I, II, or III or Loan Processors I, II, or III ("Processors") during the applicable FLSA limitations period who opted-in to the Action and who are listed in the Spreadsheet provided to the Administrator by the Parties, attached as Exhibit A.

N.    **"Other Opt-In Plaintiffs"** means individuals other than Kuzich, who opted in to the Action and who worked for HomeStreet Bank in states other than California.

O.    **"Parties"** refers jointly to Kuzich, the Opt-In Plaintiffs, and Defendants.

P.    **"Released Parties"** means Defendants, their parents, subsidiaries, affiliates, predecessors, assigns, and successors, and each of the foregoing entities' respective directors, officers, shareholders, predecessors, agents, employees, heirs, spouses, administrators, executors, trustees, members, partners, assigns, attorneys, insureds, representatives, or other persons or entities acting on their behalf.

Q.    **"Relevant Time Period"** means the time period during the applicable FLSA statute of limitations in which Kuzich or an Opt-In Plaintiff worked and was allegedly not paid overtime as a Processor. The relevant time period differs for each individual plaintiff.

R.    **"Settlement"** means the terms and conditions described in this Agreement.

2.    **Settlement Fund and Allocation.**

A.    **Settlement Fund Allocation.** Kuzich and each Opt-In Plaintiff shall be allocated a minimum payment of $150 each and a proportionate share of the Net Settlement Amount (the "Opt-In Plaintiff Fund") as described below.

B.    **Allocation of the Opt-In Plaintiff Fund.**

4817-0694-0572

   **i.** Kuzich and each Opt-In Plaintiff shall be allocated the same minimum dollar amount of $150.00 from the Opt-In Plaintiff Fund ("Minimum Opt-In Plaintiff Allocation") plus their "Individual Opt-In Plaintiff Share" (together, the "Individual Opt-In Plaintiff Allocation").

   **ii.** The Opt-In Plaintiff Fund, less the sum of Kuzich's and each Opt-In Plaintiff's Minimum Opt-In Plaintiff Allocation, or $6,900, shall equal the "Net Opt-In Plaintiff Fund."

   **iii.** The "Individual Opt-In Plaintiff Share" of the "Net Opt-In Plaintiff Fund" shall be determined using the following steps:

    **a.** For Kuzich and each Opt-In Plaintiff, the total number of his or her FLSA Weeks during his or her Relevant Time Period has been computed by FLSA Counsel and Defense Counsel, as shown in Exhibit A, with the agreement that if an individual's FLSA Weeks results in a fractional number representing four or more days in a week, the number of FLSA Weeks has been rounded up to the nearest whole number and if an individual's FLSA Weeks results in a fractional number representing three or fewer days, the number of FLSA Weeks has been rounded down to the nearest whole number. FLSA and Defense Counsel have determined and agreed that for any Opt-In Plaintiff who is an employee of HomeStreet Bank the computation of FLSA Weeks will not extend beyond June 30, 2019.

    **b.** FLSA and Defense Counsel have determined and agreed that the Total Number of FLSA Weeks is 3460.

    **c.** To calculate the Individual Opt-In Plaintiff Share of the Net Opt-In Plaintiff Fund for Kuzich and each Opt-In Plaintiff, take a fraction where the numerator is the individual's FLSA Weeks and the denominator is 3460, then convert that fraction to a percentage rounded to the thousandths and multiply the resulting percentage by the Net Opt-In Plaintiff Fund to determine each Individual Opt-In Plaintiff Share.

  **3.** **Service Payment to Kuzich.** Kuzich will receive, and Defendants will not

4817-0694-0572

oppose, a service payment in the amount of $5,000.00. This service payment is in recognition of her efforts to pursue the claims raised in this Action on behalf of the Opt-In Plaintiffs, including providing information, participating in discovery, and otherwise assisting FLSA Counsel with the prosecution of the litigation. The service payment will be made at the same time and in addition to her Individual Opt-In Plaintiff Allocation payment from the Opt-In Plaintiff Fund.

4.    **Attorneys' Fees and Expenses.** FLSA Counsel will seek, and Defendants will not oppose, Court approval of fees of one-third of the Gross Settlement Amount or $48,333.33 as attorneys' fees, plus costs and expenses of $9,074.23. The Settlement is *not* contingent upon the Court's approval of this amount. Within thirty (30) business days after Court approval, Defendants shall wire the entire $145,000.00 amount to the Administrator provided that no Notice of Appeal, Motion to Reconsider, or a challenge or objection has been filed by FLSA Counsel, Kuzich, or Opt-In Plaintiff to the Court's order approving the Settlement Agreement. Upon receipt, the Administrator will wire to FLSA Counsel an amount equaling any Court-approved fees and expenses. The Administrator will issue FLSA Counsel one or more IRS Forms 1099 for the attorneys' fees and costs paid under this Agreement. FLSA Counsel is solely responsible for the payment of any taxes associated with any payment of attorneys' fees, costs, and expenses to FLSA Counsel.

5.    **Settlement Administration Expenses.** The Settlement will be administered by a third-party administrator, Analytics LLC. ("Administrator") Reasonable fees and expenses of the Administrator shall be deducted from the Gross Settlement Amount.

6.    **Maximum Gross Settlement Amount.** Defendants' total payment under this Settlement will not under any circumstances exceed $145,000.00 except that Defendants shall also be responsible for HomeStreet Bank's portion of FICA contributions on the portion of the Net Settlement Amount from which withholdings are made. The Administrator shall

4817-0694-0572

notify Defendants of that amount, and HomeStreet Bank shall remit it to the Administrator who shall properly report and pay those amounts. HomeStreet Bank will wire the entire $145,000.00 amount to the Administrator within thirty (30) business days after the Effective Date, but shall be excused from wiring such amount if FLSA Counsel, Kuzich, or any Opt-In Plaintiff files a Notice of Appeal, Motion to Reconsider, or any challenge or objection to the Court's order approving the Settlement.. Additionally, the Administrator shall notify Defendants of the amount needed to cover HomeStreet Bank's portion of FICA withholdings, which HomeStreet Bank shall wire to the Administrator at the same time and on the same conditions as the Gross Settlement Amount. If Defendants do not agree with the Administrator's computation of the employer's portion of FICA withholdings, the Administrator shall meet and confer in good faith with counsel for the Parties to resolve the disagreement.

7. **Condition Precedent.** This Settlement is conditioned on i) the Court's approval of this Agreement, recognizing that a Court declination to approve the fees or costs award of FLSA Counsel shall not prevent this Agreement from becoming effective, and ii) the passage of the Effective Date, as defined above. Consistent with Paragraph 12 below, if the Court approves the settlement but with an award of fees, costs, and expenses less than the amount specified above, the Parties will work in good faith to obtain final approval of such an award consistent with the reasonable efforts undertaken by FLSA Counsel in the Action.

8. **Releases:**

> A. **Kuzich Release**. Kuzich, on behalf of herself, her spouse, heirs, executors, administrators, personal representatives, successors, and assigns, hereby releases, waives, acquits, and forever discharges Defendants and the Released Parties of and from any and all actions, claims, causes of actions, damages, wages, benefits, remuneration,

4817-0694-0572

compensation, penalties, debts, liabilities, demands, obligations, attorneys' fees, expenses, costs, and any other form of relief or remedy in law, equity, of whatever kind or nature, whether known or unknown, suspected or unsuspected ("Claims"), including, but not limited to, all Claims arising out of or related to Kuzich's employment with Defendants, the termination of that employment, or her filing and prosecution of this Action up to the Effective Date of this Agreement. Kuzich's full waiver and release includes, but is not limited to, any rights or Claims under the following laws, as amended: Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, 1871, 1964, and 1991, Consolidated Omnibus Budget and Reconciliation Act, Employee Retirement Income Security Act, the Equal Pay Act, Fair Credit Reporting Act, Fair Labor Standards Act, Family and Medical Leave Act, False Claims Act, Genetic Information Non-Discrimination Act, Health Insurance Portability and Accountability Act, Labor Management Relations Act, Lily Ledbetter Fair Pay Act, National Labor Relations Act, Occupational Safety and Health Act and its state equivalent, Rehabilitation Act of 1973, Sarbanes-Oxley Act, the Dodd-Frank Act, Uniformed Services Employment and Reemployment Rights Act, Worker Adjustment and Retraining Notification Act, Arizona Civil Rights Act, Arizona Drug Testing of Employees Act, Arizona Medical Marijuana Act, the anti-retaliation provisions of Arizona Workers' Compensation Act, Arizona Employment Protection Act, Arizona Fair Wages and Healthy Families Act, Arizona state wage payment laws including the Arizona Wage Act, Arizona Minimum Wage Act, and Arizona Equal Pay Act, and any other Claim under any federal, state, or local statute, regulation, or ordinance,

4817-0694-0572

or under common law, which may be waived. Kuzich's release and waiver of Claims also includes all Claims for constructive discharge, wrongful termination, negligent supervision or retention, breach of contract, breach of express or implied covenant, promissory estoppel, fraud, defamation, libel, slander, intentional or negligent infliction of emotional distress, privacy rights, tortious interference with contract, intentional or negligent misrepresentation, retaliation, restitution, failure to pay wages, bonuses, commissions, or other benefits, and attorneys' fees, as well as any Claim that could be raised by Kuzich as a result of her employment with Defendants, the termination of that employment, or the filing or prosecution of this Action.

B.    **Other Opt-In Plaintiff Release:**  The Opt-In Plaintiffs, on behalf of themselves, their spouses, heirs, executors, administrators, personal representatives, successors, and assigns, fully release, waive, acquit, and forever discharge Defendants and the Released Parties of and from any and all Claims arising from, related to, or based on the Opt-In Plaintiffs' wages, benefits, remuneration, hours worked, work performed, expenses incurred, compensation plans, programs, or arrangements or arising from, related to, or based on their employment, the filing or prosecution of this Action, or the allegations, facts, or Claims pled in the Action including, including but not limited to, all Claims based on state, federal, or local law for failure to pay overtime double wages, failure to pay minimum wage, failure to pay for all hours worked, failure to properly calculate overtime, failure to pay wages upon termination of employment, failure to timely pay wages, failure to keep accurate records, waiting time penalties, failure to reimburse business expenses,

4817-0694-0572

failure to provide meal periods or compensation in lieu thereof, failure to provide rest breaks, or compensation in lieu thereof, including without limitation, all paid sick or vacation leave or time, all Claims for restitution or equitable relief, liquidated damages, punitive damages, penalties or fines of any nature whatsoever, attorneys' fees and costs, asserted or that might have been asserted by any Opt-In Plaintiff against Defendants, the Released Parties, or any of them. The released Claims include but are not limited to, Claims meeting the above definitions under any and all applicable state, federal, or local wage and hour law in Arizona, Hawaii, Washington, Idaho, Utah, or Oregon, in all of their iterations, as well as all Claims arising under federal, state, or local law that could have been brought in the Action.

C.   **California Opt-In Plaintiffs**. The California Opt-In Plaintiffs, on behalf of themselves, their spouses, heirs, executors, administrators, personal representatives, successors, and assigns, fully release, waive, acquit, and forever discharge Defendants and the Released Parties from any and all Claims arising from, related to, or based on the California Opt-In Plaintiffs' wages, benefits, remuneration, hours worked, work performed, expenses incurred, compensation plans, programs, or arrangements or arising from, related to, or based on their employment, the filing or prosecution of this Action, or the allegations, facts, or Claims pled in the Action including, but not limited to, all Claims based on state, federal, or local law for failure to pay overtime or double wages, failure to pay minimum wage, failure to pay for all hours worked, failure to properly calculate overtime, failure to provide meal periods or compensation in lieu thereof, failure to provide rest breaks or

compensation in lieu thereof, failure to comply with itemized wage statement provisions, itemized wage statement penalties, failure to pay wages upon termination of employment, failure to timely pay wages, failure to keep accurate records, waiting time penalties, failure to reimburse business expenses, failure to pay vacation or paid sick time or leave, violations of the IWC Wage Orders, and unfair business practices under the California Labor Code and California Business and Professions Code, including without limitation all Claims for restitution or equitable relief, liquidated damages, punitive damages, penalties or fines of any nature whatsoever, attorneys' fees and costs, asserted or that might have been asserted by any California Opt-In Plaintiff against Defendants, the Released Parties, or any one of them. The Claims released by the California Opt-In Plaintiffs include Claims under the Private Attorneys General Act of 2004, Cal. Labor Code §§ 2699 *et seq.*, for civil penalties based on any of the violations alleged in the Action, which include civil penalties under PAGA for violations of the provisions of the applicable IWC Wage Orders (including violations pertaining to unpaid wages, meal periods, rest breaks, etc.). The released Claims include without limitation Claims meeting the above definition(s) under any and all applicable federal, state, or local law, including without limitation California Labor Code sections 96 through 98.2 *et seq.,* the California Payment of Wages Law, and in particular, California Labor Code §§ 200 *et seq.,* including California Labor Code §§ 200 through 243 and §§ 201, 202, 203, 204, 218, 218.5, 226, and 226.7 in particular, California Working Hours Law, California Labor Code § § 500 *et seq.,* in particular, California Labor Code §§ 510 and 512, California Labor Code §§ 1174, 1194, 1197, 1197.1 and 1198;

12 of 22

California Labor Code §§ 2800 & 2802, the California Unfair Competition Act, and in particular, California Bus. & Prof. Code §§ 17200 *et seq*.; California Code of Civil Procedure § 1021.5; and any other provision of the California Labor Code or any applicable California Industrial Welfare Commission Wage Orders, in all of their iterations, as well as all Claims arising under federal or local law that could be brought in the Action. California Opt-In Plaintiffs further release any and all rights under Section 1542 of the California Civil Code for any of the foregoing wage and hour Claims through the Effective Date of this Agreement.  Section 1542 provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

**D.**    **Defendants' Release.** Defendants, on behalf of their successors and assigns, fully release, waive, acquit, and forever discharge Kuzich, her heirs, executors, successors, assigns, and attorneys, from any and all Claims arising from or related to Kuzich's employment with Defendants, the termination of that employment, or the prosecution and filing of this Action, including but not limited to the counterclaims asserted against Kuzich, provided, however, that Defendants will not release Kuzich of or from any loans, mortgages, deeds of trust, accounts, notes, or other obligations that Kuzich may owe to Defendants, the Released Parties, or any one of them, in her personal capacity as a customer, debtor, or account holder.

**E.**    **Limited FLSA Counsel Waiver.**  In consideration of its awarded

4817-0694-0572

attorneys' fees and expenses, FLSA Counsel waives any and all Claims to any further attorneys' fees and expenses in connection with the Action. FLSA Counsel agrees that if the Court carves out the Claims based on federal law, this will not release the Parties from their good faith efforts to resolve the case.

F.   **Non-Transfer of Claims.**  Each Party to this Agreement represents and warrants that he, she, or it has not alienated, assigned, sold, encumbered, liened, mortgaged, hypothecated, or in any way or manner transferred his, her, or its Claims released, waived, acquitted, or discharged under this Agreement.

G.   **Finality.**  All Parties will be deemed to have fully, finally, and forever released, settled, compromised, relinquished, and discharged any and all released Claims.

9.   **Approval Motion, Dismissal of the Action.**  No later than ten (10) business days after the execution of this Agreement, FLSA Counsel will file with the Court an unopposed motion seeking, *inter alia,* entry of an order approving the Settlement and dismissing the Action and all claims and counterclaims with prejudice with each Party to bear his, her, or its attorneys' fees, costs, and expenses, except as provided in this Agreement.  The motion and the proposed order shall include language i) that the claims and counterclaims are dismissed with prejudice; ii) that the releases provided by the Parties in the Settlement Agreement shall extinguish all claims released by the Parties; iii) the award of attorneys' fees and costs as provided herein are approved; and iv) such other reasonable and customary terms as the Parties agree.  FLSA Counsel shall share a draft of the motion and proposed order with Defense Counsel and permit Defense Counsel no less than five (5) business days to review, meet, and confer, if necessary, on the particulars of the motion and proposed order.

4817-0694-0572

10. <u>Collective Notice and Settlement Administration</u>:

    A.    **Calculation of Payment Amounts for Kuzich and Each Opt-In Plaintiff.** No later than seven (7) business days after the Effective Date of this Agreement, Defendants will provide to FLSA Counsel and the Administrator an electronic Excel spreadsheet listing Kuzich's and each Opt-In Plaintiff's name; state of employment; last known residential address; last known telephone number; personal e-mail address (if known); Social Security number, and number of FLSA Weeks worked for HomeStreet Bank while in the Processor position from the start of the applicable three-year statute of limitations through June 30, 2019; and the Relevant Time Period for Kuzich and each Opt-In Plaintiff (the "Spreadsheet").  The Parties shall provide the Administrator with all necessary cooperation, including but not limited to, the execution of all documents necessary to administer the Settlement. Defendants will provide any other information to FLSA Counsel and the Administrator reasonably necessary to enable it to perform the calculations described in Paragraph 2 and to obtain current contact information.

    B.    **Review of Payment Amount Calculations.** Within ten (10) business days of receipt of the Spreadsheet and any other information identified in the previous subparagraph 10(A), the Administrator shall calculate the settlement allocations pursuant to the formulas provided in Paragraph 2 of this Agreement and shall compute the amount of employer-side FICA contributions that HomeStreet Bank owes.  The Administrator shall provide the calculations to FLSA Counsel and Defense Counsel. FLSA Counsel and Defense Counselwill review the calculations for accuracy and cooperate in good faith to resolve any calculation errors within no

later than five (5) business days.

C.  **Distribution of Settlement Notice and Checks.**  Within twenty (20) business days of the Parties approving the Settlement calculations, and provided that i) no Notice of Appeal, Motion to Reconsider, or other challenge or objection to the Court's order approving the Settlement Agreement has been filed by FLSA Counsel, Kuzich, or any Opt-In Plaintiff, and ii) the time to file any such notice, motion, challenge, or objection has passed; the Administrator shall mail to Kuzich and each Opt-In Plaintiff the Settlement Notice (in a form substantially similar to **Exhibit B**) along with a check for his or her Individual Opt-In Plaintiff Allocation and, in the case of Kuzich, the service award. Within 110 calendar days after issuance of the checks, the Administrator will provide to FLSA Counsel and Defense Counsel copies of the back of each check, as endorsed by the recipient and a report and accounting of any checks that have not been cashed.

D.  **Settlement Checks.**  Each settlement check shall contain the following phrase on the back of the check:  I understand I must cash this check on or before [DATE—93 days after mailing] or the check will be null and void.  By cashing this check, I agree to be bound by the Settlement Agreement approved in this case, and I agree to the waiver and release of Claims recited in the Settlement Notice at Paragraph 9 and in the Settlement Agreement, which is summarized on the stub of the check.

All Settlement Checks shall contain on the stub of the check: As more fully described in the Settlement Notice, I waive, release, and forever

4817-0694-0572

discharge any Claim I have or may have through [INSERT EFFECTIVE DATE] against HomeStreet Bank, HomeStreet Home Loan Center Co., and the Released Parties for all Claims under the Fair Labor Standards Act, and state and local wage and hour law as described more fully in the Settlement Notice and the Settlement Agreement approved by the Court in this Action.  If employed in California, I understand and agree that this includes a waiver and release of all Claims for the non-payment, improper payment, or provision of overtime, double time, rest breaks, meal periods, written wage statements, waiting time penalties, reimbursement of expenses, and PAGA Claims.

E. **Unclaimed FLSA Opt-In Plaintiff Allocation.** Any Opt-In Plaintiff Allocation that is unclaimed after one hundred twenty (120) calendar days after issue because the Opt-In Plaintiff does not sign, endorse, or cash the check, shall revert back to Defendants within ten (10) calendar days.

F. **Undeliverable Settlement Materials.** If materials sent to an Opt-In Plaintiff are returned as undeliverable, the Administrator shall promptly undertake reasonable steps to determine the Opt-In Plaintiff's current address and, if an additional address is located, to send the materials to the updated address.

G. **Tax Treatment of Payments to Kuzich and Each Opt-In Plaintiff.** For individual settlement allocations as set forth in Paragraph 2 above, fifty percent (50%) of the amount(s) paid to Kuzich and each Opt-In Plaintiff under this Agreement shall be reported by the Administrator as wages to the appropriate taxing authorities on a Form W-2 issued to

Kuzich and the Opt-In Plaintiff with his or her taxpayer identification number, and shall be subject to deductions for applicable taxes and withholdings as required by federal, state, and local law. The remaining fifty percent (50%) of the amount(s) paid to Kuzich and each Opt-In Plaintiff will be allocated to liquidated damages, interest, and/or penalties, and reported by the Settlement Administrator as non-wage income to the appropriate taxing authorities on a Form 1099 issued to Kuzich and each Opt-In Plaintiff as is applicable. The service payment set forth in Paragraph 3 will be treated as non-wage income and reported by the Administrator to the appropriate taxing authorities on a Form 1099 issued to Kuzich. The Settlement Administrator will be responsible for issuing the appropriate W-2 and 1099 forms and for ensuring payment to the appropriate federal and state taxing authorities in the amount required to cover HomeStreet Bank's portion of FICA taxes for Kuzich and each Opt-In Plaintiff. Kuzich and each Opt-In Plaintiff shall be responsible for any taxes associated with the Form 1099 payments. No later than thirty (30) days after making such payments and filing and issuing copies of the Form 1099s and W-2s, the Administrator shall provide proof of payment to HomeStreet Bank of the employer-side FICA contributions, filing of the appropriate forms with the proper governmental agencies, and issued copies of the Form 1099s and W-2s for the recipients of payments under this Agreement.

**11.    Voiding the Agreement.**

A.    If the Court rejects this Agreement, fails to approve and enter the Approval Order in substantially the form submitted by the Parties, or fails to dismiss the Action with prejudice, unless the Parties agree in

4817-0694-0572

writing otherwise, this Agreement shall be void *ab initio* and Defendants shall have no obligations to make any payments under this Agreement.

B.    A decision of the Court declining to approve any material condition of this Agreement, which effects a fundamental change of the Parties' Agreement (except as to any payment under Section 4), including requiring Defendants or either of them to pay any amount in excess of One Hundred Forty-Five Thousand and No/100ths Dollars ($145,000.00) other than the employer-side FICA payments contemplated hereunder, shall render the entire Settlement voidable and unenforceable as to all Parties at the option of HomeStreet Bank, which may exercise its option to void this Agreement by giving notice, in writing, to the other Parties and to the Court within fifteen (15) days of the Court's disapproval of any material condition, but in no event at any time after the Approval Order.

C.    Unless the Parties agree in writing otherwise, in the event that the Agreement is not approved by the Court, the Parties shall resume litigation at that time as if no Agreement had been entered. In such event, the terms and provisions of the Agreement, shall have no further force and effect with respect to the Parties and shall not be used in such litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court.

12.    **Cooperation Clause.** The Parties agree to cooperate in good faith to effectuate the Settlement of the Action, including securing the Court's approval of the Agreement and dismissal of the Action with prejudice and assisting with the

4817-0694-0572

administration of the Settlement in accordance with the terms of this Agreement.

13. **Court Retains Jurisdiction to Enforce Agreement.** The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Agreement, to the extent permitted by law, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Agreement. Any action to enforce this Agreement shall be commenced and maintained only in this Court.

14. **Non-Admissions.** Nothing in this Agreement shall be deemed an admission of liability by Kuzich, HomeStreet Bank, HomeStreet Home Loan Center Co. or the Released Parties, each of whom expressly denies any liability.

15. **Entire Agreement.** This Agreement embodies the entire agreement between the Parties, which controls over any prior communications regarding the Settlement. In entering into the Settlement, no Party has relied on any representations not explicitly contained in this Agreement.

16. **Successors.** The Settlement and this Agreement will inure to the benefit of and be binding upon the Parties' heirs, executors, personal representatives, and successors.

17. **Limited Confidentiality.** The Parties and their counsel agree to not issue public statements, press releases, websites, blogs, social media postings, or other public postings about the terms of this Agreement or Settlement of the Action except as necessary to implement the Agreement, or, in the case of Defendants, to comply with any regulatory or legal obligations.  If contacted by the media at any time, Kuzich and FLSA Counsel will say only that "The Parties have

4817-0694-0572

worked together to reach a fair resolution of this dispute" or words to that effect.

18.   **Non-Disparagement**. Kuzich and the Opt-In Plaintiffs agree to not disparage, defame, or communicate any false or negative statements about Defendants, the Released Parties, or their respective products, services, business affairs, or current and former employees in any manner whatsoever, including but not limited to, by not posting such comments on social networking, blogs, or Internet websites.

19.   **Duty to Defend.** The Parties and their counsel will support the Agreement against any legal challenge.

20.   **Warranty of Authority.** Each signatory to this Agreement warrants and represents that he, she, or it is competent and authorized to enter into this Agreement on behalf of the party that he, she, or it purports to represent. FLSA Counsel and Kuzich represent and warrant that they hold the authority to enter into this Agreement on behalf of the Opt-In Plaintiffs.

21.   **Evidentiary Privilege.** This Agreement and all associated negotiations are covered by Federal Rule of Evidence 408.

22.   **Written Modifications.** This Agreement may not be modified except by a written agreement signed by all Parties and approved by the Court.

23.   **Execution.** This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. The exchange of copies of this Agreement and of signature pages

4817-0694-0572

DocuSign Envelope ID: 2BD3CEF8-E571-4CE2-B2FE-48FF09AF3387

by facsimile transmission or other electronic means will constitute effective execution and delivery of this Agreement as to the Parties and may be used in lieu of the original Agreement for all purposes. Signatures of the Parties transmitted by facsimile or other electronic means will be deemed to be their original signatures for any purpose whatsoever.

**KATHERINE KUZICH**

By _____

Print ____Katherine Kuzich____

Date ____9/11/2019____

**HOMESTREET BANK**

By _____

Its _____

Date __9 / 16 / 2019__

Approved as to Form and as to Substance With Respect to Paragraphs 8E and 20:

By _____
FLSA Counsel

9/11/2019

**HOMESTREET HOME LOAN CENTER CO.**

By _____

Its _____

Date _____

Approved as to Form:

By _____
Counsel for Defendants

EXHIBIT A

| | LAST NAME | FIRST NAME | Number of Weeks | Date opted in to Class Action *after mailing | Relevant time period (DOH**, if less than 3 yrs prior to optin to term date) |
|---|---|---|---|---|---|
| 1 | Bateman | Chris | 35 | 9/5/2017 | 9/19/2016 to 5/22/2017** |
| 2 | Billingsley* | Linda* | 100 | 10/1/2018 * | 10/1/2015 to 8/31/2017 |
| 3 | Buxton* | Tammy* | 106 | 11/6/2018* | 6/28/2016 to 7/11/2018** |
| 4 | Cabero* | Cindy* | 49 | 10/16/2018* | 10/16/2015 to 9/23/2016 |
| 5 | Cabrera* | Cherry* | 88 | 10/16/2018* | 10/16/2015 to 6/23/2017 |
| 6 | Castro* | Carrie* | 102 | 12/26/2018* | 12/26/2015 to 12/12/2017 |
| 7 | Chavez* | Leslie* | 41 | 11/19/2018* | 11/19/2015 to 9/2/2016 |
| 8 | Ching* | Suzette* | 68 | 12/31/2018* | 12/31/2015 to 4/21/2017 |
| 9 | Cocilovo* | Stephanie* | 46 | 10/1/2018 * | 10/1/2015 to 8/19/2016 |
| 10 | Cook | Shanna | 119 | 8/29/2017 | 11/17/2014 to 2/24/2017** |
| 11 | Cortez* | Norma* | 115 | 10/1/2018 * | 10/1/2015 to 12/16/2017 |
| 12 | Diaz* | Jennifer* | 98 | 10/15/2016* | 5/31/2016 to 4/7/2018** |
| 13 | Estrada* | Carlos* | 39 | 10/1/2018 * | 10/17/2016 to 7/18/2017** |
| 14 | Flaherty* | Janet* | 83 | 11/21/2018* | 11/21/2015 to 6/23/2017 |

| | LAST NAME | FIRST NAME | Number of Weeks | Date opted in to Class Action *after mailing | Relevant time period (DOH**, if less than 3 yrs prior to optin to term date) |
|---|---|---|---|---|---|
| 15 | Forment | Tammy | 20 | 4/20/2018 | 2/1/2017 to 6/23/2017** |
| 16 | Fulkerson* | Sheila* | 155 | 10/1/2018 * | 10/1/2015 to 9/18/2018 |
| 17 | Gonzales* | Anna* | 94 | 11/30/2018* | 11/30/2015 to 9/18/2017 |
| 18 | Gonzales | Christina | 78 | 2/28/2018 | 2/28/2015 to 8/26/2016 |
| 19 | Gutierrez* | Madelyn* | 43 | 10/1/2018 * | 8/29/2016 to 6/23/2017** |
| 20 | Hussain* | Gulnur (Noor)* | 30 | 10/9/18* | 10/30/2015 to 5/27/2016** |
| 21 | Jennings | Aaron (James) | 42 | 3/17/2018 | 9/1/2016 to 6/23/2017** |
| 22 | Johnson* | Michelle* | 88 | 10/1/2018 * | 10/1/2015 to 6/8/2017 |
| 23 | Ketcherside (Miller) | Shannon | 18 | 12/5/2017 | 3/14/2016 to 7/20/2016** |
| 24 | Kuzich (Barnett) | Katherine | 18 | 8/28/17 (Complaint filed) | 11/17/2014 to 3/25/2015** |

| | LAST NAME | FIRST NAME | Number of Weeks | Date opted in to Class Action *after mailing | Relevant time period (DOH**, if less than 3 yrs prior to optin to term date) |
|---|---|---|---|---|---|
| 25 | Lopez* | Minerva* | 78 | 12/21/2018* | 12/21/2015 to 6/23/2017 |
| 26 | Ludlum | Angela | 87 | 2/6/2018 | 6/29/2015 to 2/24/2017** |
| 27 | Malfitano | Adonia | 44 | 3/1/2018 | 11/14/2016 to 9/18/2017** |
| 28 | McMurray | Kathleen (Katie) | 25 | 8/31/2017 | 11/30/2016 to 5/22/2017** |
| 29 | Mediano* | Yvette* | 131 | 10/1/2018 * | 10/1/2015 to 4/7/2018 |
| 30 | Michaux* | Zipporah* | 22 | 10/1/2018 * | 11/17/2015 to 4/16/2016** |
| 31 | Milner* | Laurene* | 99 | 10/22/2018* | 10/22/2015 to 9/16/2017 |
| 32 | Nieto* | Cristina* | 106 | 10/2/2018 * | 10/2/2015 to 10/13/2017 |
| 33 | Orlando-Lacey* | Robin* | 17 | 11/30/2018** | 4/5/2018 to 7/31/2018** |
| 34 | Ortega* | Luz* | 123 | 1/3/2018* | 5/8/2015 to 9/18/2017** |
| 35 | Pebler* | Amy* | 95 | 10/30/2018* | 9/30/2016 to 7/27/2018** |
| 36 | Perez* | Marco* | 70 | 10/4/2018* | 10/4/2015 to 2/3/2017 |
| 37 | Pershing* | Rebecca (Becky)* | 0 | 10/3/2018* | Not eligible Termed 9/23/15 before eligibility began 10/3/2015 |
| 38 | Qayum* | Abdul* | 128 | 10/1/2018 * | 12/19/2016 to 6/5/19** |

FINAL Settlement 9/17/19

| | LAST NAME | FIRST NAME | Number of Weeks | Date opted in to Class Action *after mailing | Relevant time period (DOH**, if less than 3 yrs prior to optin to term date) |
|---|---|---|---|---|---|
| 39 | Ramirez* | Jenny* | 90 | 12/28/2018* | 12/28/2015 to 9/18/2017 |
| 40 | Rocha* | Kathleen* | 64 | 11/19/2018* | 11/19/2015 to 2/10/2017 |
| 41 | Shay | Jessica | 75 | 12/5/2017 | 6/29/2015 to 12/2/2016** |
| 42 | Squires* | Amanda* | 121 | 10/29/2018* | 10/29/2015 to 2/20/2018 |
| 43 | Thomas* | Bobbie* | 131 | 10/1/2018 * | 10/1/2015 to 4/6/2018 |
| 44 | Van Herwaarden* | Claudia* | 103 | 10/1/2018 * | 10/1/2015 to 9/19/2017 |
| 45 | Williams* | Deidre* | 75 | 10/2/2018 * | 10/2/2015 to 3/7/2017 |
| 46 | Wong* | Carey* | 97 | 12/26/2018* | 12/26/2015 to 11/3/2017 |
| | TOTAL WEEKS | | 3456 | | |

FINAL Settlement 9/17/19

EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Katherine Kuzich, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br> v.<br><br>HomeStreet Bank and HomeStreet Home Loan Center Co.,<br><br>    Defendants. | Case No. 2:17-cv-02902-GMS<br><br>Assigned to the Hon. G. Murray Snow |

## OFFICIAL COURT NOTICE FOR
## PARTICIPATION IN SETTLEMENT

To:

**[NAME]**
**[ADDRESS]**
**[CITY, STATE, ZIP]**

**Please be advised that because you submitted a timely Consent to Become a Party Plaintiff in this lawsuit, you are entitled to a payment from the settlement of this suit. A settlement check payable to you is enclosed. Read this entire Notice before signing and cashing the check.**

**A federal court authorized this Notice. This is not a solicitation from a lawyer.**

☐ This Notice is directed to any individual who was employed by HomeStreet Bank or HomeStreet Home Loan Center Co. (collectively, "HomeStreet") as a Processor I, II, or III or Loan Processor I, II, or III in the Single Family Lending Division ("Processor") and who timely filed a Consent to Become a Party Plaintiff in this lawsuit ("Eligible Settlement Collective Member").

☐ Plaintiff Katherine Kuzich is a former Processor who sued HomeStreet alleging that it failed to pay her and other similarly-situated Processors all overtime compensation due. Plaintiff filed the lawsuit as a collective action under the federal Fair Labor Standards Act ("FLSA").

☐   HomeStreet has denied the allegations and asserts that Processors were compensated correctly under the law. Nevertheless, the Parties have agreed to settle this dispute for the purpose of avoiding further disputes and litigation with its attendant risk, expense, and inconvenience. The Court has not made any ruling on the merits of the claims and no party has prevailed in this action. However, the Court has reviewed and approved the settlement and this Notice.

☐   The settlement monies are being used to pay Eligible Collective Settlement Members and to pay attorneys' fees, a service award for the lead Plaintiff, litigation costs, and the expense of administering the settlement.

☐   Although it denies the allegations, HomeStreet is encouraging all Eligible Collective Settlement Members to participate in the settlement and accept their settlement payment.

☐   Under the allocation formula created by the settlement, you are being offered the enclosed settlement payment of $_____. This amount is based on the number of weeks in which you worked as a Processor during the relevant time period. The minimum Settlement Payment is One-Hundred and Fifty Dollars ($150.00).

☐   Neither FLSA Counsel nor HomeStreet make any representations concerning the tax consequences of your settlement payment. You are advised to obtain personal tax advice.

☐   These rights and options are explained more fully below and in the parties' Collective Action Settlement Agreement.

## BASIC INFORMATION

| 1. | Why did I receive this Notice and a settlement check? |
|----|---|

HomeStreet's records show that you worked as a non-exempt Processor in one or more work weeks during the relevant time period. You also submitted a timely Notice of Consent to become a Party Plaintiff in this lawsuit. Other Eligible Collective Settlement Members shall receive payments on a similar basis, but please note that one Eligible Collective Settlement Member did not perform work as a Processor during the relevant time period. As such, that individual will only receive the minimum payment of $150 set forth in Paragraph 7 below.

You are receiving this Notice because you have a right to know about the settlement of this collective action lawsuit.

Along with this Notice, you are receiving a settlement check. By cashing that check you will release claims against HomeStreet and its affiliates as explained in Paragraph 9 below.

4815-3078-7485

The Court supervising this case is the United States District Court for the District of Arizona located in Phoenix, Arizona. The lawsuit is known as *Kuzich et al. v. HomeStreet Bank et al.*, No. 2:17-cv-02902-GMS.

The individual who filed the lawsuit is the "Plaintiff." HomeStreet Bank and HomeStreet Home Loan Center Co. are the "Defendants."

| 2. | What is this lawsuit about? |
|---|---|

The lawsuit alleges that HomeStreet did not pay Processors certain overtime compensation due them in violation of federal law and, for those Processors who worked in California, allegedly failed to pay them in accordance with certain California state wage and hour laws.

Defendants deny these allegations.

The Court has not made any ruling on the merits of the claims or defenses, and no party has prevailed in this action.

| 3. | What is a collective action? |
|---|---|

In a "collective action," one or more individuals called "Named Plaintiffs" sue on behalf of other individuals who may have similar claims. However, the individuals who have similar claims do not become part of the collective action unless they opt-in, or agree to join the collective action. You agreed to join the collective action when you filed a timely Consent to Become a Party Plaintiff and you are now being offered the opportunity to participate in the settlement of this lawsuit by cashing the enclosed settlement check.

| 4. | Why is there a settlement? |
|---|---|

The Court did not decide in favor of Plaintiff or Defendants, and neither party prevailed. The parties agreed to a settlement to avoid further disputes and the risk, expense, and inconvenience of litigation. Plaintiff and her attorney believe that this settlement is a good outcome for all individuals who decide to participate in the settlement.

## WHO IS IN THE SETTLEMENT

| 5. | How do I know if I will be included in the Settlement? |
|---|---|

You are receiving a settlement check because you submitted a timely Consent to Become a Party Plaintiff. If you cash the settlement check no later than [INSERT DATE], you will be bound by the settlement and you will be releasing claims as described in Paragraph 9 below and as is more fully described in the Collective Action Settlement Agreement filed with the Court.

4815-3078-7485

## THE SETTLEMENT BENEFITS – WHAT YOU GET

| 6. | What does the Settlement provide? |
|---|---|

HomeStreet has agreed to pay up to $145,000.00 into a fund to be divided among you and the other Eligible Settlement Collective Members after the payment of all costs and legal fees of the Plaintiff including a Service Award for the Plaintiff Kuzich and the costs of administration.   The settlement fully resolves and satisfies any claims for attorneys' fees and costs approved by the Court, all amounts to be paid to Eligible Settlement Collective Members, any Court-approved service award to Plaintiff, and the Settlement Administrator's fees and costs.   Settlement checks that are not cashed by [INSERT DATE] will be null and void.

| 7. | How much is my payment and how was it calculated? |
|---|---|

Based on the allocation formula that has been approved by the Court, you are receiving a settlement check for $_____, half of which is subject to deductions for applicable taxes and withholdings like any other paycheck, and for which you will receive a W-2, and half of which will not be taxed at this time and will be reported on IRS Form 1099. You, however, will be responsible for the taxes owed on the payment for which you receive a Form 1099. The allocation formula takes into account the number of work weeks in which you worked as a Processor during the relevant time period.   The Settlement Agreement contains the exact allocation formula.   Each Eligible Settlement Collective Member will receive a Settlement Payment of no less than One Hundred and Fifty Dollars ($150.00).   You may obtain a copy of the Settlement Agreement by following the instructions in Paragraph 12 below.

## HOW YOU GET A PAYMENT

| 8. | How do I get my payment? |
|---|---|

A check is enclosed.  All you have to do is cash the settlement check by [INSERT DATE].

| 9. | What am I giving up if I cash the settlement check? |
|---|---|

You are agreeing to the release of claims against HomeStreet and its affiliates as described in this Paragraph 9 by cashing the check.  It also means that all of the Court's orders in this case will apply to you and will legally bind you.

If you worked for HomeStreet outside of California, by cashing this settlement check you are agreeing to this release:

The Opt-In Plaintiffs, on behalf of themselves, their spouses, heirs,

4815-3078-7485

executors, administrators, personal representatives, successors, and assigns, fully release, waive, acquit, and forever discharge Defendants and the Released Parties of and from any and all Claims arising from, related to, or based on the Opt-In Plaintiffs' wages, benefits, remuneration, hours worked, work performed, expenses incurred, compensation plans, programs, or arrangements or arising from, related to, or based on their employment, the filing or prosecution of this Action, or the allegations, facts, or Claims pled in the Action including, including but not limited to, all Claims based on state, federal, or local law for failure to pay overtime double wages, failure to pay minimum wage, failure to pay for all hours worked, failure to properly calculate overtime, failure to pay wages upon termination of employment, failure to timely pay wages, failure to keep accurate records, waiting time penalties, failure to reimburse business expenses, failure to provide meal periods or compensation in lieu thereof, failure to provide rest breaks, or compensation in lieu thereof, including without limitation, all paid sick or vacation leave or time, all Claims for restitution or equitable relief, liquidated damages, punitive damages, penalties or fines of any nature whatsoever, attorneys' fees and costs, asserted or that might have been asserted by any Opt-In Plaintiff against Defendants, the Released Parties, or any of them. The released Claims include but are not limited to, Claims meeting the above definitions under any and all applicable state, federal, or local wage and hour law in Arizona, Hawaii, Washington, Idaho, Utah, or Oregon, in all of their iterations, as well as all Claims arising under federal, state, or local law that could have been brought in the Action.

If you work or worked for HomeStreet in Califonia, by cashing the settlement check you are agreeing to this release:

The California Opt-In Plaintiffs, on behalf of themselves, their spouses, heirs, executors, administrators, personal representatives, successors, and assigns, fully release, waive, acquit, and forever discharge Defendants and the Released Parties from any and all Claims arising from, related to, or based on the California Opt-In Plaintiffs' wages, benefits, remuneration, hours worked, work performed, expenses incurred, compensation plans, programs, or arrangements or arising from, related to, or based on their employment, the filing or prosecution of this Action, or the allegations, facts, or Claims pled in the Action including, but not limited to, all Claims based on state, federal, or local law for failure to pay overtime or double wages, failure to pay minimum wage, failure to pay for all hours worked, failure to properly calculate overtime, failure to provide meal periods or compensation in lieu thereof, failure to provide rest breaks or compensation in lieu thereof, failure to comply with itemized wage statement provisions, itemized wage statement penalties, failure to pay wages upon termination of employment, failure to timely pay wages, failure to keep accurate records, waiting time penalties, failure to reimburse business expenses, failure to pay vacation or paid sick time or leave, violations of the IWC Wage Orders, and unfair business practices under the

California Labor Code and California Business and Professions Code, including without limitation all Claims for restitution or equitable relief, liquidated damages, punitive damages, penalties or fines of any nature whatsoever, attorneys' fees and costs, asserted or that might have been asserted by any California Opt-In Plaintiff against Defendants, the Released Parties, or any one of them. The Claims released by the California Opt-In Plaintiffs include Claims under the Private Attorneys General Act of 2004, Cal. Labor Code §§ 2699 et seq., for civil penalties based on any of the violations alleged in the Action, which include civil penalties under PAGA for violations of the provisions of the applicable IWC Wage Orders (including violations pertaining to unpaid wages, meal periods, rest breaks, etc.). The released Claims include without limitation Claims meeting the above definition(s) under any and all applicable federal, state, or local law, including without limitation California Labor Code sections 96 through 98.2 et seq., the California Payment of Wages Law, and in particular, California Labor Code §§ 200 et seq., including California Labor Code §§ 200 through 243 and §§ 201, 202, 203, 204, 218, 218.5, 226, and 226.7 in particular, California Working Hours Law, California Labor Code § § 500 et seq., in particular, California Labor Code §§ 510 and 512, California Labor Code §§ 1174, 1194, 1197, 1197.1 and 1198; California Labor Code §§ 2800 & 2802, the California Unfair Competition Act, and in particular, California Bus. & Prof. Code §§ 17200 et seq.; California Code of Civil Procedure § 1021.5; and any other provision of the California Labor Code or any applicable California Industrial Welfare Commission Wage Orders, in all of their iterations, as well as all Claims arising under federal or local law that could be brought in the Action. California Opt-In Plaintiffs further release any and all rights under Section 1542 of the California Civil Code for any of the foregoing wage and hour Claims through the Effective Date of this Agreement. Section 1542 provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

## THE LAWYERS REPRESENTING YOU

### 10.    Do I have a lawyer in this case?

By signing and returning a Consent to Become a Party Plaintiff you agreed that Rowdy Meeks Legal Group LLC will represent you and the other Eligible Settlement Collective Members and you authorized that firm to negotiate a settlement on your behalf. These lawyers are called "FLSA Counsel." You will not be charged for these attorneys. You do not need to retain your own attorney to participate in the settlement.

### 11.    What other payments are coming out of the settlement fund?

A.    Attorneys' Fees and Costs.    The Court has approved the payment of

$48,333.33 the settlement fund to FLSA Counsel for payment of attorneys' fees. These fees compensate FLSA Counsel for investigating the facts, litigating the case, and negotiating and finalizing the settlement. The Court also has approved the payment of $9,074.23 to FLSA Counsel for their out-of-pocket costs.

        B.     Service Award to Named Plaintiff, Katherine Kuzich. The Court has approved the payment of $5,000.00 from the settlement fund to the Named Plaintiff to recognize the risk she took and her service to the collective action. Named Plaintiff will receive this payment in addition to a payment under the allocation formula.

        C.     Settlement Administration. The fee for the Settlement Administrator also will be paid from the settlement fund.

## FOR MORE INFORMATION

| 12.    Are there more details about the Settlement? |
|---|

        This Notice summarizes the proposed settlement. A document filed with the Court called the Collective Action Settlement Agreement contains all terms of the settlement. You are encouraged to read it. To the extent there is any inconsistency between this Notice and the Settlement Agreement, the provisions in the Settlement Agreement control. You may obtain a copy of the Settlement Agreement by sending a request, in writing, to the Settlement Administrator at:

## NAME AND CONTACT INFO OF SETTLEMENT ADMINISTRATOR

| 13.    How do I get more information? |
|---|

        If you have other questions about the settlement, you can contact the Settlement Administrator, or FSLA Counsel at the address and/or telephone number below.

    Rowdy B. Meeks
    Rowdy Meeks Legal Group LLC
    8201 Mission Road, Suite 250
    Prairie Village, KS 66208
    (913) 766-5585
    Rowdy.Meeks@rmlegalgroup.com

DATED: _____, 2019